```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 0 1 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Charles Hack,

               Plaintiff,

—v—

Robert B. Stang,

               Defendant.

13-cv-5713 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

This case arises out of a disputed promissory note that Plaintiff Charles Hack issued to Defendant Robert Stang in June 2012. Hack now moves for summary judgment to collect the principal of the note, the accrued interest, and attorney's fees and costs spent in pursuit of this action. *See* Dkt. No. 34. For the reasons below, Hack's motion is GRANTED.

## I.    BACKGROUND

### A.    The Promissory Note

On June 28, 2015, Hack loaned Stang the sum of $100,000. *See* Def. 56.1 Statement ¶ 1. To evidence the loan, the parties executed a promissory note dated June 28, 2012 (the "First Note"). *Id.* ¶ 2.[1] The First Note states that Hack is the holder of the note and that it obligates Stang to repay the principal amount of $100,000 on or before July 1, 2013, in addition to making quarterly interest payments. *Id.* ¶¶ 4-6. The First Note provides that Stang "shall pay interest on the unpaid principal amount hereof from the date hereof until paid in full at the rate as payable

---

[1] The parties also executed a separate promissory note, the so-called Second Note, which is the subject of a separate action before this Court. *See Hack v. Stang*, 13-cv-7253 (AJN). Because of the related issues in the two cases, the parties have stipulated to brief summary judgment simultaneously in each case. *See* 13-cv-7253 (AJN), Dkt. No. 12.

1

by Holder under his line of credit with Sotheby's. Interest shall be payable quarterly on the first day of each quarter, commencing on October 1, 2012." *See* Pl.'s Ex. A-2. The First Note further contains an indemnification clause stating that "[i]n the event of a default in the payment of any principal and/or interest due under [the First Note], the Maker agrees to pay all reasonable costs and expenses incurred by the Holder hereof in enforcing [the First Note] and the collection of any principal and interest including, without limitation, reasonable attorneys' fees, disbursements and costs." *Id.*

Stang made the first two quarterly interest payments in a timely fashion on October 1, 2012 and January 1, 2013, respectively. *See* Def. 56.1 Statement ¶ 8. The subsequent quarterly interest payment was due on April 1, 2013 in the amount of $1,442.47. *Id.* ¶ 9. Stang did not make this payment, *id.* ¶ 10, nor did he make the next quarterly interest payment, due on July 1, 2013, for the sum of $1,441.21. *Id.* ¶¶ 11-12. On July 2, 2013, Hack served Stang with a written demand for payment of the principal and all outstanding interest due under the First Note. *Id.* ¶ 16.

B. **Procedural History**

This case was first filed in New York Supreme Court on July 18, 2013. *See* Dkt. No. 1. Plaintiff filed the action pursuant to N.Y. CPLR § 3213, which allows a litigant to file a motion for summary judgment in lieu of a complaint. Defendant removed the case to federal court on August 15, 2013 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). *Id.* On November 27, 2013, Stang moved to have the case dismissed for lack of personal jurisdiction or, in the alternative, to have the case transferred to the District of New Jersey. *See* Dkt. No. 15. Stang disputed personal jurisdiction on the grounds that he was a resident of Oregon and that he had had not transacted business within New York, as required for specific jurisdiction under N.Y. CPLR § 302(a)(l). The Court rejected that argument, noting that Stang engaged in several purposeful acts in New York,

2

including a number of meetings with Hack in New York to discuss and negotiate the terms of the note. *See* Dkt. No. 31 at 8. The Court similarly rejected Stang's argument that the case should be transferred to the District of New Jersey in light of allegedly related litigation between the parties in that district. *Id.* at 11. Hack subsequently filed this motion for summary judgment on November 18, 2014. *See* Dkt. No. 34.

## II.   LEGAL STANDARD

Summary judgment is properly granted when, after reviewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000). For summary judgment purposes, a genuine issue exists if the evidence is such that a reasonable jury could decide in the non-moving party's favor. *Id.*

In a summary judgment setting, "the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship,* 22 F.3d 1219, 1223 (2d Cir. 1994). However, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). "More specifically, it must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." *Id.* (citations omitted).

3

### III. DISCUSSION

Hack seeks to recover the principal sum of the First Note in addition to the interest that has accumulated on the note since Stang first ceased paying the quarterly interest installments on April 1, 2013. He further seeks attorneys' fees pursuant to the terms of the note. The Court first addresses Hack's claims under the note before turning to his request for fees.

#### A. Hack Has Established a *Prima Facie* Case of Default on The First Note

To establish a *prima facie* case of default on a promissory note under New York law, a plaintiff must provide proof of a valid note and of defendant's failure, despite proper demand, to make payment. *See Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F. Supp. 2d 394, 399 (S.D.N.Y. 2000) (citing *Gateway State Bank v. Shangri–La Private Club for Women, Inc.*, 113 A.D.2d 791 (N.Y. App. Div. 1985), *aff'd,* 67 N.Y.2d 627 (1986)). *See also Exp.-Imp. Bank of U.S. v. Agricola Del Mar BCS*, 536 F. Supp. 2d 345, 349 (S.D.N.Y. 2008) *aff'd,* 334 F. App'x 353 (2d Cir. 2009).

Once the plaintiff has made out a *prima facie* case of default, "it [becomes] incumbent on the defendant to establish, by admissible evidence, that a triable issue of fact exist[s]." *Inner City Telecommunications Network, Inc. v. Sheridan Broad. Corp.*, 10-cv-3567 (LAP), 2010 WL 2835559, at *2 (S.D.N.Y. July 13, 2010) (quoting *Silber v. Muschel,* 190 A.D.2d 727, 728 (N.Y. App. Div. 1993)). *See also In re RMM Records & Video Corp.*, 372 B.R. 603, 609-10 (Bankr. S.D.N.Y. 2007) ("When a note holder has established a *prima facie* claim, the burden shifts to the defendant to prove the 'existence' of a triable issue of fact in the form of a bona fide defense against the note. . . . It is well settled under New York law that conclusory allegations as to the defenses do not suffice to defeat a summary judgment motion for payment of a promissory

4

note.") (internal citations and quotations omitted); *Money Store of New York, Inc. v. Kuprianchik,* 240 A.D.2d 398, 399 (N.Y. App. Div. 1997) ("The plaintiff established a prima facie case that it was entitled to summary judgment by proving the existence of the note, the defendant's guaranty of the note, and the defendant's default in payment of the note after due demand. The defendant's conclusory and speculative assertions that the underlying loan was discharged or modified, thereby negating his guarantee, were insufficient to raise a triable issue of fact and defeat the plaintiff's motion.")

There is no genuine dispute of fact that Hack has made out a *prima facie* case of default on the First Note. There is no genuine dispute of fact that a valid note exists, that Hack is the holder of the note, and that the note obligated Stang to make certain payments to Hack. *See* Def. 56.1 Statement ¶¶ 1-2, 4-5; Pl.'s Ex. A-2. Further, there is no dispute of fact that on July 2, 2013, Hack issued a written demand for payment to Stang. *See* Def. 56.1 Statement ¶ 16; Pl.'s Ex. A-5. Stang does not dispute that he has failed to pay back the principal sum of the note or that he ceased making quarterly interest payments as of April 1, 2013. *See* Def. 56.1 Statement ¶¶ 6, 9-12. "This Court has little difficulty finding that Plaintiff[] ha[s] met their burden of showing there can be no material factual dispute as to any of these elements, and that they are therefore entitled to judgment as a matter of law." *Genesi v. Int'l Portfolio, Inc.*, 12-cv-5462 (RA), 2012 WL 5964391, at *3-4 (S.D.N.Y. Nov. 29, 2012) (granting summary judgment under § 3213 where plaintiff established existence of the note, demand for payment, and failure of defendant to pay). Hack has met his "initial burden of demonstrating entitlement to recovery of the note" and the burden has therefore "shifted to defendant[] to demonstrate" why Hack is not entitled to enforce the First Note. *Carlin v. Jemal*, 68 A.D.3d 655, 656, 657 (N.Y. App. Div. 2009).

### B. Stang Has Failed to Raise a Triable Issue of Fact Concerning the Enforceability of the First Note

Stang asserts that summary judgment must be denied because there are two questions of fact relating to the enforceability of the First Note. First, he contends that there are possible fact questions about payment or setoff. *See* Opp. ¶ 1. Second, Stang argues that there are outstanding questions concerning the calculation of interest on the note. *Id.* As the Court explains, neither of these arguments is compelling.

#### 1. Stang's Claimed Right of Setoff Does Not Create a Triable Issue of Fact

"The common law doctrine of setoff allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Cohen v. Elephant Wireless, Inc.*, 03-cv-4058 (CBM), 2004 WL 1872421, at *3 (S.D.N.Y. Aug. 19, 2004) (quoting *In re Malinowski*, 156 F.3d 131 (2d Cir. 1998)) (internal quotations removed). Stang argues that there is an unresolved question of fact concerning his possible right to setoff his obligation under the First Note with damages he may recover from Hack in a parallel federal proceeding in the District of New Jersey. Stang, the plaintiff in that case, alleges that Hack breached a contract to sell his 49 percent interest in Renewal Willingboro, LLC ("Willingboro"), a real estate company in Westchester County, New York. Stang argues that "[w]ithout the benefit of discovery, we do not know whether Hack has paid himself any monies since July 2012 to which he was not entitled and which could constitute either a payment on the note or a set-off to the note. The note does not prohibit a set-off." *Id.* ¶ 2. Stang requests 45 days to conduct further discovery on this issue. *Id.*

Stang's argument fails to raise a genuine, triable issue of fact for several reasons. First, Stang does not provide any factual support for his wholly unsubstantiated setoff theory. Such a

6

"bald assertion, unsupported by a scintilla of evidence, is insufficient to survive summary judgment." *Moreno v. Paige*, 00-cv-8097 (HB), 2001 WL 740774, at *2 (S.D.N.Y. June 29, 2001) (citing *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)). Although the existence of a setoff may preclude summary judgment, New York cases demonstrate that an unsupported claim to a setoff are insufficient to avoid summary judgment under § 3213. For instance, in *Bragarnik v. Zodiac on Brighton Cafe, Inc.*, 189 A.D.2d 744, 745 (N.Y. App. Div. 1993) the plaintiffs sold their interest in a restaurant to a certain Ms. Moshkowich, who in turn executed several promissory notes payable to the plaintiffs. After a fire destroyed part of the restaurant, Ms. Moshowich replaced, at her own expense, the contents of the restaurant, while the plaintiffs received the proceeds of an insurance settlement stemming from the fire. *Id.* Ms. Moshkowich then sold her share of the restaurant to the defendant, who assumed the balance of the promissory notes due to the plaintiffs. When the defendant later failed to pay the balance of the promissory notes, the plaintiffs sought summary judgment pursuant to § 3213. *Id.* The Court concluded that the plaintiffs made out a *prima facie* case for enforcement of the notes, but nonetheless denied summary judgment, concluding that "[t]he *documentary evidence* demonstrates that Moshkowich would have had the right to claim, as a set-off or as an accord and satisfaction to the amount due under the notes, the amount of insurance proceeds allocable to the loss of contents of the restaurant, which were received and retained by the plaintiffs." *Id.* (emphasis added). The Court concluded that "in view of the defendant's proof in support of its defense [of setoff], the plaintiffs have not eliminated any material issues of fact from this case and summary judgment was properly denied." *Id.* at 746. *See also Smith v. Meadow Mech. Corp.*, 203 A.D.2d 356, 356 (N.Y. App. Div. 1994) (concluding that the lower court properly denied summary judgment where documentary

7

evidence established that "a factual issue existed as to whether the defendant was entitled to a set-off").

Unlike the defendant in *Bragarnik*, Stang presents no evidence or factual detail concerning a possible setoff of his obligations under the First Note. Rather, he merely provides "conclusory allegations regarding the existence of set-offs against the amount owed" under the First note, which is insufficient to "demonstrate the existence of a material issue of fact." *Affiliated Credit Adjustors, Inc. v. Carlucci & Legum*, 139 A.D.2d 611, 612-13 (N.Y. App. Div. 1988). *See also Ellenville Nat. Bank v. Freund*, 200 A.D.2d 827, 828 (N.Y. App. Div. 1994) (affirming grant of summary judgment where "defendants maintain[ed] that they may have a right to set off against the amount due on the note amounts allegedly overpaid on prior loans" but failed to present "any facts in support thereof"); *Tec Am., Inc. v. Globe Monte Metro, Inc.*, 293 A.D.2d 739 (N.Y. App. Div. 2002) ("The defendant's conclusory and unsubstantiated allegations in opposition to the motion failed to establish the existence of a triable issue of fact with respect to its claim that it is entitled to a setoff . . .") Stang's speculative and conclusory contentions, contained in a single paragraph of a two-page affidavit in opposition, plainly fail to meet the defendant's burden to rebut Hack's *prima facie* right to enforce the note by "establish[ing], by admissible evidence, the existence of a triable issue with respect to a bona fide defense." *Cutter Bayview Cleaners, Inc. v. Spotless Shirts, Inc.*, 57 A.D.3d 708, 710 (N.Y. App. Div. 2008) (internal quotation removed). *See also Genesi*, 2012 WL 5964391, at *3-4 (granting summary judgment under § 3213 where "instead of submitting a memorandum of law, Defendant relie[d] solely on [a] cursory" one-page affidavit making assertions that were "at best, vague and tangential."); *F.D.I.C. v. Jacobs*, 185 A.D.2d 913, 913 (N.Y. App. Div. 1992) (affirming summary judgment under § 3213 and explaining that "[i]is well settled that an opponent of a

summary judgment motion must avoid mere conclusory allegations and lay bare his or her proof.")

Indeed, not only does Stang fail to present any evidence which would raise a triable issue of fact concerning the possible existence of a setoff, but further, as a matter of law, Stang's hypothetical setoff – the damages from the parallel New Jersey action – may not be used to pay down Stang's obligations under the First Note. Under New York law, "'there is no right to set off a possible, unliquidated liability against a liquidated claim that is due and payable.' " *Willett v. Lincolnshire Mgmt., Inc.,* 302 A.D.2d 271, 271 (N.Y. App. Div. 2003) (quoting *Spodek v. Park Prop. Dev. Assocs.,* 263 A.D.2d 478, 478–79 (N.Y. App. Div. 1999)); *accord New Haven Props. Ltd. v. Grinberg,* 293 A.D.2d 386, 387 (N.Y. App. Div. 2002) ("defendants cannot offset the subject liquidated, past due liability against the disputed, unliquidated liability it claims against plaintiff's customer.") Stang's claim that Hack improperly retained funds from the Willingboro venture "is currently contingent and hypothetical" and therefore cannot form the basis for a setoff. *See Cytec Indus., Inc. v. Allnex (Luxembourg) & Cy S.C.A.,* 14-cv-1561 PKC, 2015 WL 3762592, at *13 (S.D.N.Y. May 15, 2015) (denying plaintiff's request for declaration that it could offset tax indemnification payments owed defendant against post-closing adjustments that defendant owed to plaintiff where the sum of the post-closing adjustments was a matter of ongoing dispute). *See also Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.,* 524 F. Supp. 2d 412, 424 (S.D.N.Y. 2007) (holding that a defendant "has no right to 'set-off' its pending disputed and unliquidated claim against" a plaintiff's "present entitlement to damages owed"). *Accord Dunn v. Uvalde Asphalt Pav. Co.,* 175 N.Y. 214, 219 (1903) ("It is to be observed, moreover, that there can be no such thing as a right to set off a possible but unestablished liability, unliquidated in amount, against a liquidated legal claim that is due and

payable. This is as obviously impracticable in equity as in law.") To the extent Hack has in fact improperly retained monies from the Willingboro venture, that is a proper subject for the ongoing New Jersey litigation, but Stang may not interject that unresolved, but unrelated, question into this case in an attempt to stave off summary judgment.[2]

Finally, Hack argues that Stang disclaimed any right to a setoff under the plain text of the First Note, which states:

> No reference herein to the LLC Operating Agreement and no provision of this Promissory Note shall alter or impair the obligation of the Maker, which is absolute and unconditional, to pay the principal of and interest on this Promissory Note at the place, at the respective times herein prescribed.

*See* Pl.'s Ex. A-2. The Court observes that promissory notes often contain "absolute and unconditional" clauses barring setoffs, but that in every case found by the Court, those clauses *explicitly* disclaimed such setoffs. *See, e.g., Sotheby's Fin. Servs., Inc. v. Baran*, 00-cv-7897 (BSJ), 2003 WL 21756126, at *5 (S.D.N.Y. July 29, 2003) *aff'd*, 107 F. App'x 235 (2d Cir. 2004) ("The obligations of the Maker hereunder are absolute and unconditional and the payment of any amounts due hereunder shall not be subject to the results of any sale of the Collateral or to any defenses, set-offs or counterclaims of any kind whatsoever."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Enyart*, 86-cv-8325 (LLS), 1987 WL 33605, at *2 (S.D.N.Y. Dec. 23, 1987) ("The obligations represented by the Note shall be absolute and unconditional and all payments

---

[2] The Court notes that, although the rule barring use of an unliquidated claim as a setoff against a sum due and payable provides a sufficient basis for rejecting Defendant's claimed right to a setoff, a separate legal basis may also exist. A setoff may only be applied where the parties' debts are mutual. *See Millenium Envtl., Inc. v. City of Long Beach of State of New York*, 35 A.D.3d 408, 412 (N.Y. App. Div. 2006). Debts are mutual when they are "due to and from the same person in the same capacity." *In re Midland Ins. Co.*, 79 N.Y.2d 253, 259 (1992). It appears from the record that the First Note was made between Hack and Stang in their individual capacities. Conversely, the Willingboro transaction at issue in the New Jersey action involved a transaction between Hack and Stang as stakeholders in an LLC. "As a general matter, members and managers of an LLC under New York law owe a specific fiduciary duty to other LLC members . . ." *Weidberg v. Barnett*, 752 F. Supp. 2d 301, 308 (E.D.N.Y. 2010). The issue was not briefed and the Court does not resolve it here.

due thereunder shall be made in full, irrespective of any setoff, claim, counterclaim, defense or other right which the undersigned may have against anyone for any reason whatsoever"); *Zyskind v. FaceCake Mktg. Technologies, Inc.*, 101 A.D.3d 550, 551, 956 N.Y.S.2d 45, 46 (2012) ("The obligation to make the payments provided for in this Note are absolute and unconditional and not subject to any defense, set-off, counterclaim, rescission, recoupment or adjustment whatsoever"); *Fleet Bank v. Petri Mech. Co.*, 244 A.D.2d 523, 664 N.Y.S.2d 462 (1997) (note contained "a continuing, absolute and unconditional guaranty of payment" and explicitly waived "the right to interpose any defense [and] any set-off or counterclaim of any nature or description"). The First Note does not contain such an explicit waiver of a right to setoff, but does state that Stang's obligation to "pay the principal of and interest on" the note is "absolute and unconditional." In light of the other grounds for rejecting Stang's claimed right to a setoff as presenting a genuine dispute of material fact, the Court need not determine whether New York law requires disclaimer of setoff rights to be explicitly stated or whether the "absolute and unconditional" language suffices.

In summary, Stang has failed to present a genuine dispute of material fact as to any possible setoff. His contingent damages award in New Jersey is, at best, a potential unliquidated liability that, as a matter of law, may not be used as a setoff against a liquidated claim that is due and payable. *See Willett*, 302 A.D2d at 271.

### 2. Stang Has Not Presented a Genuine Dispute of Material Fact Concerning the Calculation of Interest

The Court next turns to Stang's argument that summary judgment should be denied because the interest term in the First Note is ambiguous. *See* Def. Opp. ¶ 3. The First Note stated that "[t]he Maker shall pay interest on the unpaid principal amount hereof from the date hereof until paid in full at the rate as payable by Holder under his line of credit with Sotheby's."

11

*See* Pl.'s Ex. A-2. Stang claims that he understood this to mean that the line of credit at Sotheby's was in Hack's name. *See* Declaration of Robert B. Stang ("Stang Declaration") ¶ 2. Hack claims that it was mutually understood at the time of signing that "at the rate as payable by Holder under his line of credit with Sotheby's" referred to the Hearn Family Trust's line of credit with Sotheby's and that Stang was aware of the fact both that Hack is the authorized agent to conduct business on behalf of the Hearn Family Trust and that Hearn is the last name of Hack's wife. *See* Declaration of Charles Hack ("Hack Declaration") ¶¶ 5-6. As Hack explains, the Hearn Family Trust line of credit at Sotheby's is subject to a floating interest rate based on LIBOR. *Id.* ¶ 7. It was this interest rate that Hack used to determine the quarterly interest payments billed to Stang under the First Note, including the two installments that Stang paid. *See* Def. 56.1 Statement ¶¶ 8-9; Pl.'s Exs. A-1–A-5.

As an initial matter, "[u]nder New York law . . . the question of whether a written contract is ambiguous is a question of law for the court." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (citing *Seiden Associates, Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 429 (2d Cir. 1992). "Ambiguity is determined by looking within the four corners of the document, not to outside sources . . ." *Id.* (quoting *Kass v. Kass*, 91 N.Y.2d 554, 566 (1998). "At the summary judgment stage, [t]he mere assertion of an ambiguity does not suffice to make an issue of fact." *In re Coudert Bros.*, 487 B.R. 375, 389 (S.D.N.Y. 2013) (internal quotes omitted). Conversely, however, if a contract is susceptible to two reasonable interpretations, summary judgment is not appropriate. *See State St. Bank & Trust Co. v. Mut. Life Ins. Co. of New York*, 811 F. Supp. 915, 921 (S.D.N.Y. 1993).

The contract here is unambiguous. It plainly states that the interest on the First Note is controlled by "his [Hack's] line of credit with Sotheby's." *See* Pl's Ex. A-2. This unambiguous

language means that the interest on the First Note shall be equal to the interest on a line of credit controlled by Hack at Sotheby's. Stang has failed to meet his burden of proposing any reasonable alternative reading of this language. *See Mycak v. Honeywell, Inc.*, 953 F.2d 798, 802 (2d Cir. 1992) (internal quotations removed) (to avoid summary judgment, "[t]he nonmoving party must show that the contractual language is susceptible of at least two fairly reasonable meanings.") Instead of proposing an alternative reasonable reading of the contract, Stang merely alludes to the fact that the Sotheby's account controlled by Hack is under the name of Hack's wife, a fact not within the four corners of the contract. *See JA Apparel*, 959 F.2d at 396.

Even if the contract were ambiguous on this point, summary judgment would still be appropriate. When a contract is ambiguous, it is normally the role of the factfinder to weigh the extrinsic evidence in reaching a conclusion as to the contract's meaning. *Id.* at 397. *See also Mellon Bank, N.A. v. United Bank Corp. of New York*, 31 F.3d 113, 116 (2d Cir. 1994) ("As a general matter, we have held that when a contract is ambiguous, its interpretation becomes a question of fact and summary judgment is inappropriate.") However, "when the language is ambiguous and there is relevant extrinsic evidence, but the evidence creates no genuine issue of material fact and permits interpretation as a matter of law," summary judgment is appropriate. *See Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (quoting *Shepley v. New Coleman Holdings Inc.*, 174 F.3d 65, 72 n.5 (2d Cir. 1999). *See also Nycal Corp. v. Inoco PLC*, 988 F. Supp. 296, 299 (S.D.N.Y. 1997) (summary judgment appropriate "when the [contract] language is ambiguous and there is relevant extrinsic evidence, but the extrinsic evidence creates no genuine issue of material fact and permits interpretation of the agreement as a matter of law.") Furthermore, a court "may also grant summary judgment regarding the interpretation of ambiguous language if

13

the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Compagnie Financiere*, 232 F.3d at 158 (citing *Mellon Bank*, 31 F.3d at 116).

Stang, in addition to failing to propose any reasonable alternative interpretation of the contract, points to no extrinsic evidence contradicting Hack's reading of the interest rate provision. The only extrinsic evidence on this issue makes clear that Hack controlled precisely one line of credit at Sotheby's, held in the name of the Hearn Family Trust, and that he was never at any time associated with any other line of credit at that institution. *See* Reply Declaration of Charles Hack ¶ 2. Accordingly, no genuine dispute of material fact exists as to the interpretation of the contract term. Further, even if the extrinsic evidence did not conclusively explain the term's meaning, Stang does not explain the materiality of any alleged ambiguity. *Cf. Packer v. SN Servicing Corp.*, 04-cv-1506 (MRK), 2008 WL 359411, at *10 (D. Conn. Feb. 8, 2008) (plaintiffs' unfair practices claim survived summary judgment where they were able to "show an ascertainable loss of money resulting from the allegedly erroneous calculations of interest"). In sum, Stang has offered nothing more than "the mere assertion of ambiguity," which "does not suffice to make an issue of fact." *Malmsteen v. Universal Music Grp., Inc.*, 940 F. Supp. 2d 123, 131 (S.D.N.Y. 2013) (quoting *Thompson v. Gjivoje,* 896 F.2d 716, 721 (2d Cir. 1990)) (internal quotations removed). In conclusion, the terms of the contract are unambiguous and, further, review of the extrinsic evidence, though unnecessary, demonstrates that there are no remaining questions of material fact as to the contract's meaning. Accordingly, Stang has not raised a genuine dispute of material fact fit for trial on the terms of the contract.

3.  **Summary**

In sum, the Court concludes that Hack has successfully demonstrated a *prima facie* right to enforce the terms of the First Note and that Stang has failed to meet his "burden of proving the 'existence of a triable issue of fact in the form of a bona fide defense against the note.'" *Nat'l Union Fire Ins.*, 2005 WL 736233, at *1 (quoting *Couch White L.L.P. v. Kelly*, 286 A.D.2d 526, 527 (N.Y. App. Div. 2001)). Accordingly, the Court grants Hack's motion for summary judgment to enforce the First Note.

C.  **Hack Is Entitled to Attorneys' Fees and Costs Under the Terms of the First Note**

In addition to the value of the note itself, Hack seeks to recover legal fees and costs spent in prosecuting this action. "In New York, the general rule is that attorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule." *Travelers Cas. & Sur. Co. v. Dale*, 542 F. Supp. 2d 260, 264 (S.D.N.Y. 2008) (quoting *Hooper Assocs. Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491 (1989)) (internal quotations removed). Promises to indemnify a party are to be strictly construed in light of the general American rule that parties bear the responsibility of paying their own litigation costs. *See Abakan, Inc. v. Uptick Capital, LLC*, 943 F. Supp. 2d 410, 415 (S.D.N.Y. 2013). In cases under § 3213, New York courts have made clear that clauses indemnifying noteholders may not be expanded to award fees "unrelated to the enforcement of those rights" under the note. *Tudisco v. Duerr*, 89 A.D.3d 1372, 1376 (N.Y. App. Div. 2011). Similarly, fees and costs recovered pursuant to contract must be reasonable. *See Coniglio v. Regan*, 186 A.D.2d 709, 710 (N.Y. App. Div. 1992) ("Attorneys' fees unilaterally fixed by contract are no less subject to the test of reasonableness than are attorneys' fees which are awarded by the court.")

In this case, the First Note states that:

> In the event of a default in the payment of any principal and/or interest due under this Promissory Note, the Maker agrees to pay all reasonable costs and expenses incurred by the Holder hereof in enforcing this Promissory Note and the collection of any principal and interest including, without limitation, reasonable attorneys' fees, disbursements and costs.

*See* Pl.'s Ex. A-2. Stang does not challenge the general validity of this clause, but rather presents a series of increasingly unpersuasive attacks on the fee and cost figures provided by Hack. *See* Def. Opp. ¶¶ 4-10. First, Stang asserts that a portion of Hack's claimed legal fees were expended on matters unrelated to the "enforcing this Promissory Note." Stang cites specifically to billing entries on September 13, 2013, October 14, 2013, October 15, 2013, December 5, 2013, and May 22, 2014. *Id.* ¶ 4. On these dates, Hack's attorneys were engaged in work that Stang claims were related to the New Jersey action, rather than enforcement of the First Note. For instance, the September 13, 2013 entry records that one of Hack's counsel "[a]ttend[ed] conference call with client and NJ counsel, email to all post-call re: clarification of NJ suit." *See* Pl.'s Ex. G at 5. Similarly, a block entry from another of Hack's lawyers on October 15, 2013 billed for, *inter alia*, "receipt and review of New Jersey federal complaint" and "call with Stang's New Jersey attorney." *Id.* at 7.

Stang's argument on this point is without merit. As a review of the billing sheet in its entirety makes clear, Hack's attorneys in this case were not involved in prosecuting the New Jersey action. Rather, they were obliged to communicate with Hack's New Jersey counsel and review the filings in that case because of Stang's attempt to transfer this action to the District of New Jersey as related to the parallel litigation. *See* Dkt. No. 15. Hack's attorneys successfully beat back that effort. *See* Dkt. No. 31. It is well recognized that a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in

16

response." *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980) (en banc)). While it is true that the indemnification clause in the First Note must be read narrowly, *see Abakan*, 943 F. Supp. 2d at 415, Hack's opposition to the motion to dismiss or transfer the action was not in pursuit of claims unrelated to enforcement of the First Note. *See Tudisco*, 89 A.D.3d at 1376.

Stang further opposes granting Hack his attorneys' fees on summary judgment because he contends that, in opposing the motion to dismiss or transfer, Hack's attorneys put forth an unreasonable argument that Stang was subject to general personal jurisdiction under N.Y. CPLR § 301. *See* Def. Opp. ¶ 5. Stang's argument is, once again, without merit. As an initial matter, he misrepresents the Court's ruling on the issue of jurisdiction. In its September 18, 2014 Memorandum & Order resolving Stang's motion to dismiss or transfer, the Court stated that it need "not reach additional arguments regarding the propriety of general personal jurisdiction pursuant to CPLR § 301" because Hack had successfully established that Stang was subject to specific personal jurisdiction. *See* Dkt. No. 31 at 10. It is dubious to therefore characterize Hack as "unsuccessfully" arguing that Stang was subject to general jurisdiction. *See* Def. Opp. ¶ 5. A review of Hack's opposition to the motion demonstrates that his attorneys appropriately cited the controlling authorities on general jurisdiction and put forward a plausible argument that, in light of his numerous business contacts with the state of New York, Stang was subject to general jurisdiction. *See* Dkt. No. 20 at 4-7. Moreover, in his opposition to summary judgment, Stang proffers no legal authority to bolster his unsubstantiated accusation that the "argument was not reasonable under controlling New York law." *See* Def. Opp. ¶ 5.

Stang similarly argues that Hack's attorneys' fees should be reduced because the Court rejected his argument that Stang waived his objection to lack of personal jurisdiction. *Id.* ¶ 6. Although, in this instance, Stang accurately describes the Court's ruling, *see* Dkt. No. 31 at 4-7, this

17

alone does not warrant a reduction of fees. Courts recognize that "an unsuccessful claim does not necessarily equate with an objectively unreasonable claim." *Psihoyos v. John Wiley & Sons, Inc.*, 11-cv-1416 (JPO), 2013 WL 1285153, at *3 (S.D.N.Y. Mar. 29, 2013) (quoting *Ann Howard Designs, L.P. v. Southern Frills, Inc.*, 7 F.Supp.2d 388, 390 (S.D.N.Y. 1998)). Hack's waiver argument, though unsuccessful, was not so patently unreasonable as to warrant a deduction of fees. Moreover, although they lost the battle on the single issue of waiver, Hack's attorneys won the war overall, successfully defeating Stang's motion in its entirety.

Defendant next charges that "there are questions about other entries in the time sheets," *see* Def. Opp. ¶ 8, but fails to provide compelling examples. For instance, the alleged double billing on July 12, 2013 highlighted by Stang does not appear on the billing report actually provided as the basis for Hack's claim of $41,777.50 in fees. *See* Pl.'s Ex. H. Similarly, Stang's contention that Hack's attorneys should not be compensated for an hour researching issues related to default judgment because no default judgment was actually entered is groundless. It is essential to the job of an attorney to research and anticipate issues that may arise in litigation, even if they in fact never come to pass. Stang provides no support for his contention that Hack's attorneys' brief research into default judgment was unreasonable.

Stang's final argument on the issue of fees and costs is meritless. Stang objects to Hack's use of Federal Express, at the cost of $32.11, in lieu of the United States Postal Service and further criticizes the employment of a New York process server, at a fee of $365.08, when it "would have been much cheaper to use a local Oregon process server." *See* Def. Opp. ¶ 9. Stang does not suggest that any of Hack's costs were unreasonable, only that cheaper alternatives may have been available in certain instances. The Court rejects Stang's attempt to "nitpick without substance at particular costs." *McIntosh v. N. Cal. Universal Enterprises, Inc.*, 07-cv-1080 (LJO) (GSA), 2010 WL 3341905, at *3 (E.D. Cal. Aug. 23, 2010).

In sum, the Court rejects Stang's challenges to Hack's requested fees and costs. Hack has met his burden of demonstrating that the requested fees and costs are reasonable. *See* Pl.'s Ex. H. *See also Cablevision Sys. New York City Corp. v. Diaz*, 01-cv-4340 (GEL) (FM), 2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002) (quoting *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983)) ("In the Second Circuit, a party seeking an award of attorneys' fees must support that request with contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'") Moreover, because he has supported his reasonable attorneys' fee request with sufficient documentation and provided a sum certain, no hearing or inquest is needed. *Cf. Simoni v. Time-Line, Ltd.*, 272 A.D.2d 537, 537-38 (N.Y. App. Div. 2000). Accordingly, the Court awards Hack attorneys' fees in the sum of $41,777.50 and costs in the sum of $702.19.

## IV. CONCLUSION

In conclusion, Hack's motion for summary judgment is granted in its entirety. He is awarded $109,211.75 in principal and interest on the First Note and a further $42,479.69 in fees and costs pursuant to the indemnification clause of the First Note. This resolves Dkt. No. 34. The Clerk of Court is instructed to terminate the case.

SO ORDERED.

Dated: Sept 1, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge